UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80649-CIV-HURLEY/HOPKINS

**ACHVA VAHAVA, LLC, et al.,**
    **Plaintiffs,**

vs.

**ANGLO IRISH BANK
CORPORATION PLC,**
    **Defendant.**
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the court upon defendant's motion for summary judgment [DE # 58]. For the reasons given below, the court will grant the motion with respect to defendant's counterclaims, which in light of plaintiffs' voluntary dismissal, are the only claims currently pending in this action..

## BACKGROUND

This is an action arising out of a mortgage and note on real property located in Boca Raton, Florida. As required on a motion for summary judgment, the facts described below have been viewed in the light most favorable to plaintiffs as the non-moving parties. *See Waters v. Miller*, 564 F.3d 1355, 1356 (11th Cir. 2009).

In May 2007, plaintiff Achva Vahava, LLC ("Achva") borrowed $11,401,000 from Anglo Irish Bank Corporation PLC[1] ("the Bank"), the defendant, to finance the purchase of commercial real estate located at 21301 Powerline Road in Boca Raton, Florida. Achva executed a note in favor of defendant. A mortgage on the property and a security interest in personal property in addition to

---

[1]Defendant has subsequently changed its name to Anglo Irish Bank Corporation, Limited.

limited personal guarantees by Izzy Ashkenazy and Jonathan Agus secured payment under the note.

Achva purchased the property with the aim of building and maintaining a synagogue on a portion of it and leasing the remaining commercial space. It believed that such an arrangement would benefit both the synagogue and the commercial aspect of the property since the worshipers at the synagogue would want to be within walking distance and would therefore lease the available office space on the property. Achva communicated its plan to defendant before purchasing the property.

Achava did not want the synagogue to be affected by any of the requirements of the mortgage. As a result, the parties included a provision in the mortgage to allow Achva to obtain a release of a portion of the property from the mortgage as long as the mortgage was current and the "released property [was] designated as an individual tax lot." Ans. and Affirm Def. Ex. 2, at § 12, DE # 7-2. After signing the mortgage, however, Achva learned that it would be impossible or extremely difficult to subdivide the parcel into an individual tax lot. Achva therefore never pursued the release.

Unable to obtain a release, Achva instead determined to lease a portion of the property to the Congregation Ohev Shalom, Inc. ("the synagogue"). However, the mortgage provided that "[m]ortgagor shall not enter into any Lease for commercial space[2] without first obtaining Mortgagee's written approval of the terms and conditions thereof and the Lessee thereunder." Ans. Ex. 2, at § 6.4, DE # 7-2. In an instrument dated June 2008, Achva and the synagogue agreed to a forty-nine year ground lease. Notice re Mot. Summ. J. Ex. 6, DE # 59-6. Achva then provided a copy of the ground lease to the Bank for approval.

---

[2]The parties have not disputed whether the lease at issue is one for "commercial space" and therefore within the ambit of the restriction in Section 6.4 of the mortgage. For that reason, the Court will not address this issue.

Defendant did not approve the proposed ground lease, and on July 17, 2009 defendant sent Achva written notice of default. Notice re Mot. Summ. J. Ex. 7, DE # 59-7. In subsequent correspondence, defendant asserted that the ground lease contained several unreasonably tenant-friendly terms that would "weaken the collateral's value." Notice re Reply to Resp. to Mot. Summ. J., Ex. 2, DE # 103-2. Defendant has since obtained expert testimony to support this view. Notice re Mot. Summ. J. Ex 8, at ¶¶ 14, 27, 32, DE # 59-8.

The note matured on May 15, 2010. Ans. Ex. 1, at § (ii), DE # 7-1. Achva, however, did not pay the sums due. On June 4, 2010, defendant sent Achva a written notice of default for failure to repay the note. Thereafter, Achva and the synagogue filed this action against defendant asserting claims for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Florida Deceptive and Unfair Trade Practices Act. The Bank responded with counterclaims for foreclosure on the mortgage and its security interest in personal property, attorney's fees and costs, and judicial sale of the mortgaged property. Defendant subsequently filed a motion for summary judgment on plaintiffs' claims and on its own counterclaims.

On August 26, 2011, the parties filed a joint motion to stay the action and continue trial pursuant to settlement negotiations in related litigation. Also as part of these negotiations, plaintiffs voluntarily dismissed their claims against defendant, rendering defendant's motion for summary judgment on these claims moot.

## JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000. Venue is proper in this court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claim occurred in the Southern District of Florida.

## DISCUSSION

### A.     *Standard on Motion for Summary Judgment*

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether summary judgment is appropriate, facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Matsuhita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims such that a reasonable jury could return a verdict in his favor. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial and entitles the moving party to summary judgment. *See Celotex*, 477 U.S. at 323; *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998).

### B. *Application to Defendant's Motion*

Defendant bases its motion for summary judgment on its claim for foreclosure on the occurrence of several events of default under the mortgage. In particular, defendant alleges that Achva failed to repay the outstanding principal and unpaid interests due under the note on the maturity date of May 15, 2010. Achva has admitted that it has not repaid this amount. Defendant also points to plaintiffs' entry into the ground lease, failure to maintain the minimum guarantor level of liquidity required as of June 30, 2009, and failure to pay taxes due as required under the mortgage as of March 31, 2010 as bases of default.

Plaintiffs' chief defense to defendant's counterclaim is that defendant was not entitled to payment on the maturity date as a result of its bad-faith refusal to approve the ground lease between Achva and the synagogue. Plaintiffs also assert other affirmative defenses similarly based on the theory that defendant either breached the agreement by wrongfully withholding its approval of the ground lease (e.g., unclean hands, *pari delicto*, failure to perform) or that the contract is somehow defective—either by misrepresentation, fraudulent inducement, absence of a "meeting of the minds," or some related defect—if it did not impose such a duty to approve the ground lease on defendant. Thus, the nature of the ground lease and the parties' duties with respect to it is critical to plaintiffs' defense to defendant's counterclaims.

### 1. *The Ground Lease*

The parties' competing theories regarding the ground lease and defendant's refusal to approve it can be summarized as follows. Plaintiffs believe that defendant intended to withhold approval of the ground lease as a means of extracting payments on allegedly unrelated loans

involving the same parties to varying degrees.[3] In Plaintiffs' view, "Anglo Irish sent the Ground Lease Default letter in a bad faith effort to force Agus and Ashkenazy to cause payments to be made toward the Unrelated Loans." Pls.' Resp. Opp'n Mot. Dismiss, at 8, DE # 98. Plaintiffs further suggest that the reasons defendant now offers as reasonable bases to reject the ground lease are merely post-hoc rationalizations meant to mask the true intent behind its initial refusal.

Defendant responds that the delinquency of the unrelated leases is in fact a permissible basis for its rejection of the ground lease pursuant to the terms of the mortgage, that other reasonable bases exist to justify defendant's rejection (e.g., that the ground lease would diminish the value of the property and thus reduce defendant's security), and finally that plaintiffs had already breached the contract by agreeing to the ground lease without obtaining defendant's prior approval, thus precluding any subsequent breach by defendant for failing to approve the lease. Plaintiffs, in turn, deny that they ever actually executed the ground lease without defendant's approval and could not have done so because the lease itself incorporates defendant's approval as a requirement for its full execution.

Having reviewed the parties' arguments and the relevant documents, the court finds that the agreement between Achva and the synagogue constituting the ground lease was fully executed without defendant's approval in breach of Section 6.4 of the mortgage. The ground lease states that it is fully executed "on the last date all necessary signatures and/or initials of all parties have been obtained." The ground lease also incorporates as exhibits a "Non-Disturbance and Attornment Agreement" (exhibit "D") and a "Subordination, Non-Disturbance and Attornment Agreement" (exhibit "E"), which include signature lines for "Lender." Plaintiffs argue that defendant's signatures

---

[3]Specifically, defendant has financed the purchase of at least four other properties in transactions featuring guarantees by Agus and Askenazy.

on these lines were "necessary signatures" and that the ground lease therefore could not have been executed prior to obtaining defendant's approval. As put by Achva and the synagogue, "[b]y its terms, the Ground Lease did not become effective until it was executed by Anglo Irish." Pl.'s Resp. Opp'n to Def.'s Mot. Summ. J., at 7, DE # 98.

However, in section nine the ground lease explains that an executed version of the agreement embodied by Exhibit "D" must be furnished to tenant (i.e., the synagogue) only "upon Tenant's request" and that failure to provide such an executed agreement merely entitles tenant to terminate the ground lease. Notice re Mot. Summ. J. Ex. 6, DE # 59-6. In other words, the absence of an executed version of Exhibit "D" would not render the ground lease void but rather *voidable* at tenant's election. The ground lease's terms become nonsensical if this provision is interpreted as entitling tenant to terminate the agreement if not provided with a document without which the agreement could not have existed in the first place.

Similarly, the "Subordination, Non-Disturbance and Attornment Agreement" ("SNDA") attached to the ground lease as Exhibit "E" is merely the embodiment of an agreement that would be provided to tenant upon request rather than a document whose execution was a condition precedent to the valid execution of the ground lease itself. The ground lease states, "provided that *upon request* by the Tenant, Mortgagee and Landlord execute and deliver to Tenant . . . a 'Subordination, Non-Disturbance and Attornment Agreement' . . . in the form of Exhibit 'E.'" Notice re Mot. Summ. J. Ex. 6, at § 9, DE # 59-6 (emphasis added). If tenant were never to make such a request, defendant would not have to execute Exhibit "D" or "E." Thus, neither assures that defendant would have to approve the ground lease prior to its full execution, and signatures on neither document were "necessary"as the term is used in ground lease's own standard for its full execution.

Because Achva breached its obligation under the mortgage to obtain defendant's approval before entering into the ground lease, defendant's failure to approve the same—even assuming it had an obligation under the contract to do so—is no defense to Achva's subsequent defaults.

   2.   *Defendant's Other Bases for Rejecting the Ground Lease*

Even if plaintiffs' breach of Section 6.4 of the mortgage did not excuse the Bank's performance under that section, the court is unpersuaded that defendant's withholding of approval even under the circumstances suggested by plaintiffs constitutes a breach of defendant's obligation not to withhold its approval in bad faith.  Setting aside defendant's evidence that the ground lease impaired its position, the mortgage itself permits defendant to consider defaults on the allegedly unrelated loans guaranteed by Ashkenay and Agus in deciding whether to approve the ground lease. Section 8.11 of the mortgage lists the occurrence of an event of default under "any other obligation or indebtedness of Mortgagor or any Other Liable Party to Mortgagee" as an event of default under the mortgage.  Ans. Ex. 2, at § 8.11, DE # 7-2.  *Other Liable Party* is defined under the mortgage as "[e]ach and every person, corporation, limited liability company, partnership or other entity (other than the Mortgagor) now or hereafter liable, absolutely or contingently, for the whole or any part of the indebtedness evidenced by the Note, including, without limitation, the Guarantors."  Notice re Mot. Summ. J. Ex. 4, at § 1, DE # 59-4.  *Guarantor(s)*, in turn, is defined as "[c]ollectively, Izzy Ashkenazy and Jonathan Agus, jointly and severally."  *Id.*  Thus, if as plaintiffs suggest, defendant considered arrearages regarding the other loans involving Askenazy and Agus in determining whether to approve the ground lease, it is unclear why such a consideration would be inappropriate.

Based on the foregoing analysis, the court finds that defendant did not unreasonably withhold its approval of the ground lease.  Thus, plaintiffs' affirmative defense alleging defendant's failure to perform its obligations fails.  To the extent that any of the other defenses incorporate the argument

that defendant wrongfully withheld approval of the ground lease, they too must fail.

   3.  *Plaintiffs' Related Affirmative Defenses*

  Likewise, plaintiffs cannot assert affirmative defenses based on fraudulent inducement, misrepresentation, estoppel, unclean hands, or *in pari delicto*. Each of these defenses centers around the same theory–i.e., that if the mortgage did not impose a duty to approve the ground lease under the circumstances as they unfolded, defendant either made representations suggesting or allowed Achva to believe in error that defendant would approve the lease and that defendant would inevitably be allowed to construct a synagogue on the property. In support of this position, plaintiffs point to defendant's knowledge that this was Achva's purpose in entering into the transaction and the fact that section twelve, which would have permitted plaintiffs to obtain a release of a portion of the property if they were able to have it designated a separate tax lot, was clearly added in contemplation of the eventual lease and construction of the synagogue.

  The court needs not parse the various interrelated elements of each of these defenses to dispose of them because they all incorporate the same premise. Put simply, the fact that defendant may have known that plaintiffs wanted to enter the lease did not create an unspoken promise to approve the lease in light of the actual language of the mortgage the parties entered. Furthermore, plaintiffs cannot argue that any such promise existed in light of the language of the mortgage. The loan documents expressly set conditions under which Achva could obtain a release of a portion of the property from the mortgage and conditioned any lease on defendant's prior approval. Additionally, the mortgage had standard merger and integration language indicating that the loan documents constituted the entirety of the parties' agreement. Therefore, any indications plaintiffs allege they received from defendant indicating that they would inevitably be permitted to construct a synagogue on the property cannot be reconciled with these provisions, reliance on any

representations to that effect would be unreasonable, and under the parol evidence rule no evidence that the parties had a contrary agreement would be admissible. *See, e.g.*, *Lynkus Commc'ns, Inc. V. WebMD Corp.*, 965 So.2d 1161, 1166 (Fla. Dist. Ct. App. 2007) (dismissing defenses of, *inter alia*, fraud and promissory estoppel based on the plain language of the agreement and its merger and integration clause); *Eclipse Med., Inc. v. Am. Hydro-Surgical Instr., Inc.*, 262 F. Supp. 2d 1334, 1343 (S.D. Fla. 1999) (barring under the parol evidence rule any evidence of "prior or contemporaneous representations to vary or contradict the clear and unambiguous terms of a contract"). This precludes plaintiffs from establishing defenses based on fraudulent inducement, misrepresentation, or promissory estoppel.

In the case of plaintiffs' *in pari delicto* defense, it is especially apparent that plaintiffs are attempting to fit a multiplicity of legal notions to conform to the same underlying premise that the Bank should have approved the ground lease. *In pari delicto* prohibits a party from recovering or wrongs it itself engaged in. *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1044 (Fla. Dist. Ct. App. 2007). The wrong plaintiffs allege on the part of defendant is either refusing to approve the lease or inducing plaintiffs to enter the mortgage based on the belief that defendant would approve the lease. Thus, this claim is duplicative of the previously discussed defenses and can be rejected on the same bases.

    4.    *Plaintiffs' Remaining Defenses*

Plaintiffs' remaining affirmative defenses are equally unavailing. Plaintiffs have not presented any arguments or facts to support waiver, release, or impossibility. In addition, there appears to be no remaining dispute—nor can there be—as to whether defendant is a party to the loan documents, its change in name from Anglo Irish Bank Corporation plc to Anglo Irish Bank Corporation Limited notwithstanding.

Order Granting Defendant's Motion for Summary Judgment
Achva Vahava, LLC v. Anglo Irish Bank Corp. Ltd.
Case No. 10-80649-CIV-HURLEY/HOPKINS

## CONCLUSION

In summary, defendant did not engage in any wrongful behavior that would justify the Bank's breach of the mortgage by entering the ground lease without prior approval or its subsequent breach by not paying the note when it became due. Thus, none of plaintiffs' affirmative defenses succeed, and plaintiff is entitled to summary judgment based on the uncontroverted fact that Achva defaulted on the note. In light of this, the court will grant defendant's motion for summary judgment on its counterclaim against Achva for foreclosure on its security interests in the real and personal property described in the loan documents.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that

1. Defendant's motion for summary judgment [DE # 58] is **GRANTED** with respect to its counterclaims.

2. The court will enter final judgment by separate order. Defendant **SHALL** submit no later than **TEN (10)** days after the date this order is issued a proposed order entering final judgment.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 21st day of September, 2011.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*

For updated court information, visit unofficial Web site
at http://www.judgehurley.com